IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| PUEBLO OF LAGUNA; PUEBLO OF JEMEZ,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL REGAN, in his official capacity as Administrator of the U.S. Environmental Protection Agency; U.S. ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 1:21-cv-277-JFR-KK |

**DEFENDANTS' OPPOSED MOTION FOR VOLUNTARY REMAND OF THE NWPR WITHOUT VACATUR**

Defendants United States Environmental Protection Agency ("EPA"), EPA Administrator Michael Regan, the United States Army Corps of Engineers ("Corps"), and Acting Assistant Secretary of the Army Jaime Pinkham (collectively, the "Agencies"), move the Court to remand the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) (the "NWPR") to the Agencies and to dismiss the claims challenging that rule.  This Motion is being filed in accordance with the Parties' proposed briefing schedule as set forth in the Joint Status Report.  ECF No. 21.

As explained more fully herein, remand of the NWPR is appropriate because the Agencies have completed their review of the NWPR and have decided to commence a new rulemaking to revise or replace the rule.  A remand would avoid potentially unnecessary

litigation in this Court over aspects of the NWPR that will be reconsidered in new rulemaking, would conserve the parties' limited resources, and would best serve the interest of judicial economy.  In addition, remand would avoid requiring the Agencies to take positions on merits questions that might appear to pre-judge issues that will be reconsidered through notice-and-comment rulemaking.  Through the Agencies' administrative rulemaking process, all members of the public, including Pueblo of Laguna and Pueblo of Jemez (the "Plaintiffs"), will have the opportunity to submit comments and recommendations, and the Agencies' new final rule therefore may resolve or moot some or all of the claims presented in this litigation.  If a new rule does not resolve Plaintiffs' concerns, that new rule could itself be challenged.  If a challenge occurs, the parties and reviewing courts would benefit from reviewing the Agencies' new final action and new administrative record, rather than continuing to litigate the NWPR on a record that may be rendered moot and out of date.

The Agencies have conferred with Plaintiffs regarding this motion.  Plaintiffs oppose remand of the NWPR to the Agencies without vacatur.

## BACKGROUND

### A.      Statutory and Regulatory Overview

The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), seeks "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251 *et seq.*  Among other provisions, the CWA prohibits "the discharge of any pollutant by any person" without a permit or other authorization, 33 U.S.C. § 1311(a), to "navigable waters," defined as "the waters of the United States," *id*. at 1362(7).

The Army Corps of Engineers first promulgated regulations defining "waters of the

2

United States" in the 1970s.  Covered waters included only those waters subject to the ebb and flow of the tide or used "for purposes of interstate or foreign commerce."  39 Fed. Reg. 12,115, 12,119 (Apr. 3, 1974).  Thereafter, the Corps broadened its interpretation of the phrase.  *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977).  In the 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition; those regulations remained in effect until 2015.  *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations").  Over time, the Agencies refined their application of the 1986 Regulations, as informed by three Supreme Court decisions.  *See, e.g.*, *United States v. Riverside Bayview Homes*, 474 U.S. 121 (1985); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001); *Rapanos v. United States*, 547 U.S. 715 (2006).

In 2015, the Agencies comprehensively revised the regulatory definition of "waters of the United States."  Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) (the "2015 Rule").  In the "2019 Rule", the Agencies repealed the 2015 Rule and reinstated the prior regulatory framework.  84 Fed. Reg. 56,626 (Oct. 22, 2019).  In 2020, the Agencies again comprehensively revised the definition of "waters of the United States" with the NWPR.

### B.     The NWPR

The NWPR establishes four categories of jurisdictional waters: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)."  40 C.F.R. § 120.2 (EPA); 33 C.F.R. § 328.3 (Corps); *see also* 85 Fed. Reg. at 22,273.  The NWPR also establishes exclusions and defines the

operative terms used in the regulatory text.  85 Fed. Reg. at 22,270; *see also id*. at 22,340–41

(regulatory text).  The NWPR includes "perennial" tributaries that "flow[] continuously year-

round" and "intermittent" tributaries that "flow[] continuously during certain times of the year

and more than in direct response to precipitation (*e.g.*, seasonally when the groundwater table is

elevated or when snowpack melts)."  *Id*. at 22,338.  Ephemeral waters (waters that flow in direct

response to precipitation) are categorically excluded from jurisdiction under the NWPR.  *Id*. at

22,340.

        The NWPR also includes "adjacent wetlands" as subject to CWA jurisdiction if they

directly abut a jurisdictional water, are "inundated by flooding" from a jurisdictional water

during "a typical year," are separated from a jurisdictional water "only by a natural berm, bank,

dune, or similar natural feature," or are separated from a jurisdictional water "only by an

artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct

hydrologic surface connection" between the wetlands and the jurisdictional water in a "typical

year."  *Id*. at 22,338.  Multiple parties have challenged the NWPR in various district courts.[1]

---

[1] *See, e.g.*, *N.M. Cattle Growers' Ass'n v. EPA*, No. 1:19-cv-988 (D.N.M.); *Pueblo of Laguna v. Regan*, No. 1:21-cv-277 (D.N.M); *Pascua Yaqui Tribe v. EPA*, No. 4:20-cv-266 (D. Ariz.); *California v. Regan*, No. 3:20-cv-03005 (N.D. Cal.); *Waterkeeper All. v. Regan*, No. 3:18-cv-03521 (N.D. Cal); *Colorado v. EPA*, No. 1:20-cv-1461 (D. Colo.); *Env't Integrity Project v. Regan*, No. 1:20-cv-1734 (D.D.C.); *Chesapeake Bay Found. v. Regan*, No. 1:20-cv-1064 (consolidated with 1:20-cv-1063) (D. Md.); *Conservation L. Found. v. EPA*, No. 1:20-cv-10280 (D. Mass.); *Murray v. Regan*, No. 1:19-cv-1498 (N.D.N.Y.); *S.C. Coastal Conservation League v. Regan*, No. 2:20-cv-1687 (D.S.C.); *Puget Soundkeeper All. v. EPA*, No. 2:20-cv-950 (W.D. Wash.); *Wash. Cattlemen's Ass'n v. EPA*, No. 2:19-cv-00569 (W.D. Wash.).

**C.      This Litigation**

Plaintiffs filed their Complaint on March 26, 2021.  ECF No. 1.  It challenges both the

NWPR and the previous 2019 Rule, alleging that the rules violate the Administrative Procedure

Act for a variety of reasons. *Id*.

On June 7, 2021, the Agencies filed a response to Plaintiffs' Complaint, which was styled

as a response to Plaintiffs' Petition for Review of Agency Action, according to the Tenth

Circuit's decision in *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560 (10th Cir. 1994).  On

June 28, 2021, the Parties filed a Joint Status Report, which set forth a proposed briefing

schedule for this Motion for Remand, and advised the Court that the Parties believed that the

Court should limit scheduling to this particular motion.  On June 30, 2021, the Court entered an

order adopting the proposed briefing schedule.  ECF No. 25.

**D.      The Agencies' Review of the NWPR and Decision to Initiate New
         Rulemaking**

The Agencies promulgated the NWPR to define the phrase "waters of the United States,"

which appears in Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7).  On January 20,

2021, following the presidential transition, President Biden issued Executive Order 13990,

entitled "Executive Order on Protecting Public Health and the Environment and Restoring

Science to Tackle the Climate Crisis."  86 Fed. Reg. 7,037 (Jan. 25, 2021) ("EO 13990").  In

relevant part, EO 13990 states that it is the policy of the new administration

> to listen to the science; to improve public health and protect our
> environment; to ensure access to clean air and water; to limit
> exposure to dangerous chemicals and pesticides; to hold polluters
> accountable, including those who disproportionately harm
> communities of color and low-income communities; to reduce
> greenhouse gas emissions; to bolster resilience to the impacts of
> climate change; to restore and expand our national treasures and

monuments; and to prioritize both environmental justice and the
creation of the well-paying union jobs necessary to deliver on these
goals.

*Id*. at 7,037.  EO 13990 directs federal agencies to "immediately review and, as appropriate and

consistent with applicable law, take action to address the promulgation of Federal regulations

and other actions during the last 4 years that conflict with these important national objectives,

and to immediately commence work to confront the climate crisis."  *Id*.

Over the past few months, the Agencies have been reviewing the NWPR pursuant to EO

13990.  As explained in the attached declarations, the Agencies have now reviewed the NWPR

pursuant to President Biden's direction in EO 13990 and have decided to initiate new rulemaking

to revise the definition of "waters of the United States."  Ex. 1, Declaration of Radhika Fox

("Fox Decl.") ¶¶ 8–10; Ex. 2, Declaration of Jaime Pinkham ("Pinkham Decl.") ¶¶ 8–10.[2]

**STANDARD OF REVIEW**

Agencies have inherent authority to reconsider past decisions and to revise, replace, or

repeal a decision to the extent permitted by law and supported by a reasoned explanation.  *FCC

v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n v. State

Farm Mutual Auto. Ins. Co*., 463 U.S. 29, 42 (1983); *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084,

1086 (10th Cir. 1981).  Further, an agency's interpretation of a statute it administers is not

"carved in stone" but must be evaluated "on a continuing basis," for example, "in response to . . .

a change in administrations."  *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs*., 545

---

[2] The declarations of Radhika Fox and Jaime Pinkham were filed as exhibits in support of the
Agencies' motion to remand the NWPR without vacatur filed on June 9, 2021 in *Conservation
Law Found. v. EPA*, No. 1:20-cv-10820, Dkt. Nos. 113-1 and 113-2 (D. Mass. June 9, 2021).
They are attached hereto as Exhibits 1 and 2.

U.S. 967, 981 (2005) (internal quotation marks and citations omitted).  Voluntary remand is

proper where an agency requests "a remand (without confessing error) in order to reconsider its

previous position."  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  In

other words, remand should be granted so long as "the agency intends to take further action with

respect to the original agency decision on review."  *Limnia, Inc. v. Dep't of Energy*, 857 F.3d

379, 386 (D.C. Cir. 2017).

"Generally, courts only refuse voluntarily requested remand when the agency's request is

frivolous or made in bad faith."  *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir.

2012) (granting remand and citing *SKF USA Inc.*, 254 F.3d at 1029); *see also Limnia, Inc.*, 857

F.3d at 386–88 (refusing remand where agency had no intention to revisit challenged decision).

Voluntary remand is appropriate when the request is reasonable and timely.  *See Macktal

v. Chao*, 286 F.3d 822, 826 (5th Cir. 2002); *see also Ariz. Pub. Serv. Co. v. EPA*, 562 F.3d 1116,

1122, 1131 (10th Cir. 2009) (granting EPA's motion for voluntary remand).  In exercising its

discretion to grant remand, a court may consider whether any party opposing remand would be

unduly prejudiced.  *TransWest Express LLC v. Vilsack*, No. 19-cv-3603, 2021 WL 1056513, at

*5 (D. Colo. Mar. 19, 2021).

**ARGUMENT**

Remand is proper in this case because the Agencies have completed their review of the

NWPR and have decided to initiate new rulemaking to define "waters of the United States."  Fox

Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10.  Remand would also conserve judicial resources and

would not unduly prejudice the parties.

I.     **The Agencies Have Established Grounds for Voluntary Remand of the NWPR.**

An agency may seek remand because it wishes to revisit its interpretation of the governing statute, the procedures it followed in reaching its decision, or the decision's relationship to other agency policies. *SKF USA Inc*., 254 F.3d at 1028–29. The Agencies seek remand for these exact reasons. Pursuant to EO 13990, the Agencies conducted a review of the NWPR. Fox Decl. ¶ 10; Pinkham Decl. ¶ 10. Through that review, the Agencies "have identified substantial concerns with the NWPR and have determined that additional consideration should be given to certain aspects of the NWPR through notice-and-comment rulemaking." *Id.*

Voluntary remand is appropriate because the Agencies have identified "substantial and legitimate concerns" with the NWPR and intend to embark upon a rulemaking process to replace the rule. *SKF USA Inc.*, 254 F.3d at 1029 ("[I]f the agency's concern [with the challenged action] is substantial and legitimate, a remand is usually appropriate."); *see also TransWest Express*, 2021 WL 1056513, at *3. The Agencies have explained that they have substantial concerns about certain aspects of the NWPR and the effects of the NWPR on the nation's waters, including whether the NWPR adequately considered the CWA's statutory objective in determining the scope of "waters of the United States" and, as a result, whether the process adequately considered the effects of the NWPR on the integrity of the nation's waters. Fox Decl. ¶¶ 10, 12; Pinkham Decl. ¶¶ 10, 12. For example, the Agencies have identified concerns about whether sufficient consideration was given to the impact of the NWPR's categorical exclusion of ephemeral waters. Fox Decl. ¶ 14; Pinkham Decl. ¶ 14. In addition, the Agencies have noted on-the-ground effects of the NWPR since the rule went into effect, which reinforces their

8

conclusion that a new rulemaking in which the Agencies will reconsider issues of concern with the NWPR and its impacts is warranted.  Fox Decl. ¶¶ 15–20; Pinkham Decl. ¶¶ 15–20.

Remand would give the Agencies an opportunity to fully explore and address these issues and the concerns of the parties and other stakeholders through the administrative rulemaking process.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  Remand would also allow the Agencies to develop a new administrative record, which would benefit the Court and the parties if a new rule were to be litigated.  "[T]his kind of reevaluation is well within an agency's discretion," *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1038 (D.C. Cir. 2012) (citing *Fox Television Stations, Inc*., 556 U.S. at 514–15), and courts should allow it.  *See Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018).

Moreover, deferring to the Agencies' new rulemaking process also promotes important jurisprudential interests.  "In the context of agency decision-making, letting the administrative process run its course before binding parties to a judicial decision prevents courts from 'entangling themselves in abstract disagreements over administrative policies, and . . . protect[s] the agencies from judicial interference' in an ongoing decision-making process."  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (citation omitted).  Allowing the administrative process to run its course here will let the Agencies "crystalliz[e] [their] policy before that policy is subjected to judicial review," *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999), and avoid "inefficient" and unnecessary "piecemeal review."  *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 30 (D.C. Cir. 1984) (citation and internal quotation marks omitted).

Courts have granted remand in similar situations.  In *SKF USA Inc.*, the Federal Circuit found a remand to the Department of Commerce appropriate in light of the agency's change in policy.  254 F.3d at 1025, 1030.  Likewise, in *FBME Bank Ltd. v. Lew*, the District Court for the District of Columbia remanded a rule to the Department of the Treasury to allow the agency to address "serious 'procedural concerns,'" including "potential inadequacies in the notice-and-comment process as well as [the agency's] seeming failure to consider significant, obvious, and viable alternatives."  142 F. Supp. 3d 70, 73 (D.D.C. 2015).  And in *TransWest Express*, the District Court for the District of Colorado remanded decisions of the Natural Resource Conservation Service to the agency to allow it to reexamine those decisions.  2021 WL 1056513, at *3, *6.

The Agencies are not requesting vacatur of the NWPR during the remand.  Vacatur rests in the sound discretion of the reviewing court and it depends on "the seriousness of the . . . deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed."  *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (internal citation and quotation marks omitted); *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (same).  The Court may also consider other factors, including the likelihood that errors can be mended without altering the rule and "the balance of equities and public interest considerations."  *Cent. Me. Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001).  In light of the Agencies' stated intent to address their substantial concerns with the NWPR through a new rulemaking, the Agencies request that the Court order a remand and are not including a request for vacatur.

**II.      Granting Remand Conserves Judicial Resources**

Granting remand here promotes judicial economy and conserves the parties' and the courts' resources.  Courts "have recognized that '[a]dministrative reconsideration is a more expeditious and efficient means of achieving an adjustment of agency policy than is resort to the federal courts.'"  *B.J. Alan Co. v. ICC*, 897 F.2d 561, 562 n.1 (D.C. Cir. 1990) (quoting *Commonwealth of Pennsylvania v. ICC*, 590 F.2d 1187, 1194 (D.C. Cir. 1978)).  "Remand has the benefit of allowing 'agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.'"  *Util. Solid Waste*, 901 F.3d at 436 (quoting *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993)).  Allowing the Agencies to proceed with a new rulemaking allows them to address concerns with the NWPR through the administrative process.  The Agencies might resolve Plaintiffs' concerns through that process, potentially rendering unnecessary future litigation that could strain the courts' and parties' resources.  Remand would preserve those resources.

Here, the Parties have yet to engage in any substantive litigation regarding the NWPR, and therefore starting to litigate this case wastes the Agencies' and Plaintiffs' resources in the present, resources that could be better spent on the rulemaking process.  Although Plaintiffs have not filed their opening brief, it is likely that many of the issues that they would put before the Court will be re-evaluated in the Agencies' new rulemaking. Remand to the Agencies will allow the Agencies to focus their resources on the new rulemaking, with input from Plaintiffs and other interested stakeholders.  Fox Decl. ¶ 14; Pinkham Decl. ¶ 14.  In particular, ongoing litigation could interfere with the Agencies' rulemaking, as the Agencies would have to prioritize pending

litigation deadlines. *See Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013) (because agency did "not wish to defend" the action, "forcing it to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the rule's deficiencies.").

The Agencies' new rulemaking may fully address and resolve Plaintiffs' concerns or, at least, narrow the issues if Plaintiffs were to challenge a new rule arising out of the new rulemaking. Even if remand does not resolve all of the claims presented by Plaintiffs, subsequent judicial review will likely turn on a new and different record that will necessarily alter the nature of this Court's review. Therefore, continuing to litigate the very same issues that the Agencies may resolve through a new rulemaking, "would be inefficient," *FBME Bank*, 142 F. Supp. 3d at 74, and a waste of judicial resources.

## III.     Remand Would Not Prejudice the Parties.

Remand would not prejudice any party. The Agencies intend to consider and evaluate issues raised in various legal challenges to the NWPR during the rulemaking process, including arguments made by Plaintiffs in their Complaint. Fox Decl. ¶¶ 8–10; Pinkham Decl. ¶¶ 8–10. As addressed above, the Agencies may revise or replace the NWPR in a way that resolves Plaintiffs' claims. For example, Plaintiffs claim that the NWPR is inconsistent with the CWA's statutory objective. ECF No. 1, ¶ 14. The Agencies intend to consider this very issue on remand. Fox Decl. ¶ 13; Pinkham Decl. ¶ 13. Through their rulemaking process, the Agencies will consider the policies set forth in EO 13990 and intend to ensure that "waters of the United States" is defined in a manner consistent with the CWA's statutory objective. In addition,

12

Plaintiffs will have the opportunity to participate through the notice and comment process by submitting comments on any new proposed rule.  Fox Decl. ¶ 10; Pinkham Decl. ¶ 10.

## CONCLUSION

The Agencies have identified numerous concerns with the NWPR, many of which have been raised by Plaintiffs in this case, and intend to evaluate those concerns through a new notice-and-comment rulemaking.  Fox Decl. ¶¶ 9–20; Pinkham Decl. ¶¶ 9–20.  Where, as here, the Agencies have committed to reconsidering the challenged action, the proper course is remand to allow the Agencies to address their concerns through the administrative process.  The Agencies respectfully ask the Court to remand the NWPR, without vacatur, and dismiss the claims challenging the NWPR, rather than requiring the Agencies to litigate a rule that may be replaced.

Respectfully submitted this 2d day of July, 2021.

JEAN E. WILLIAMS
Deputy Assistant Attorney General

*/s/ Phillip R., Dupré*
PHILLIP R. DUPRÉ
SONYA J. SHEA
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Tel. (202) 616-7501 (Dupré)
Tel. (303) 844-7231 (Shea)
phillip.r.dupre@usdoj.gov
sonya.shea@usdoj.gov

ANDREW A. SMITH (NM Bar No. 8341)
Environment and Natural Resources Division
United States Department of Justice
c/o United States Attorney's Office
201 Third Street, N.W., Suite 900
P.O. Box 607

Albuquerque, New Mexico 87103
Tel. (505) 224 1468
andrew.smith@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2021, I electronically transmitted the foregoing to the

Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to

registered counsel for all parties.


*/s/ Phillip R. Dupré*